IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| PENNIE C. CANALES, | ) | CASE NO.1:21-CV-01051-DAR |
| | ) | |
| | ) | JUDGEDAVID A. RUIZ |
| Plaintiff, | ) | United States District Judge |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant, | | |

**Introduction**

Before me by referral[1] is an action under 42 U.S.C. § 405(g) by Pennie C. Canales seeking

judicial review of the 2020 decision of the Commissioner of Social Security that denied Canales'

2010 application for disability insurance benefits – the decision here following two prior judicial

remands.[2] The Commissioner has filed the transcript.[3] Under terms of my initial[4] and procedural[5]

---

[1] The matter was assigned to me under Local Rule 72.2 by United States District Judge Benita Y. Pearson in a non-document order entered on May 20, 2021. The case was subsequently re-assigned to United States District Judge David A. Ruiz pursuant to General Order 2022-03.
[2] ECF No. 1.
[3] ECF No. 6. Pursuant to Local Rule 16.3.1(d) the filing of the transcript constitutes the Commissioner's answer.
[4] ECF No. 4.
[5] ECF No. 7.

orders, the parties have briefed their positions[6] and submitted supplemental fact sheets and charts.[7]They have met and conferred with the goal or reducing or clarifying the issues.[8]

For the following reasons, I will recommend that the decision of the Commissioner be affirmed.

**Facts**

As noted, the decision now at issue is the result of hearings held after the second of two judicial remands.[9]The sole issue here is whether the latest RFC finding of the Commissioner is supported by substantial evidence because it did not properly consider the opinion of Medical Expert Jack Lebeau, M.D.[10]Specifically, the issue concerns whether the ALJ impermissibly "played doctor"[11] by concluding that Canales was not "functionally limited"[12] from wearing an Unna boot – a device described as "like a compression stocking though more stiff."[13]

Canales contends that, despite assigning "great weight" to ME Lebeau's opinion, and ostensibly relying on it in formulating the RFC, the ALJ concluded, without explanation, that Canales was able to stand/sit for 4 hours in an 8 hour workday while ME himself purportedly testified that she could stand/sit for only 3 hours.[14]Canales asserts that this alleged error was material because the vocational expert (VE) in this matter testified that if she could only stand/sit

---

[6] ECF Nos. 10 (Canales), 12 (Commissioner), 13 (Canales reply).
[7] ECF Nos. 9 (Canales), 12, Attachment (Commissioner).
[8] ECF No. 14.
[9] Tr. at 1686.
[10] ECF No. 13 at 1.
[11] *Id*. at 2.
[12] Tr. at 1698.
[13] *Id*.
[14] ECF No. 10 at 7-8.

for 3 hours per 8 hour workday, the RFC would need to be sedentary and she would, under the Grid, be found disabled.[15]

The Commissioner argues first, as to the Unna boot itself, that Canales did not show that she used such a device during the relevant period, except for two months following the initial onset.[16]Further, the Commissioner points out that, while the ME testified that use an Unna boot might limit walking "a little," he also noted that there were very few references to an Unna boot in the record, which addressed a period of twenty years.[17]Finally, the Commissioner maintains that the ALJ expressly noted that the ALJ concluded his analysis by observing that while the treatment records confirm the need for an Unna boot,[18]the records also "do not suggest that she was functionally limited when wearing it because it is like a compression stocking but more stiff."[19]

**Analysis**

Initially, I note that the issue here is resolved under the well-established substantial evidence standard, which need not be restated.

The essential element of Dr. Lebeau's testimony is the examination by Canales' counsel. Dr. Lebeau initially testified that Canales could, among other things, stand for 2 hours per workday and sit for 2 hours per workday, with each individual period limited to 30 minutes.[20]Canales'

---

[15] *Id*. at 9.
[16] ECF No. 12 at 5.
[17] *Id*. at 6.
[18] Tr. at 1698.
[19] *Id*. I note that this description is not identical to the description used by Canales representative at the hearing which characterized it as a "hard-like, plastic-like" walking boot. Tr. at 1768-41.
[20] *Id.* at 1737-40.

counsel then asked, "[*W]hen she's in an Unna boot,* does that limit, further limit, the time when she can be up and on her feet?"[21]

Thus, the key question is just how often Canales would be in an Unna boot. The transcript discloses that Canales' counsel began a discussion of this matter with a question premised as follows, regarding the issue of Carnales' ability balance:

And there was some evidence in the record regarding her being in an Unna boot for *extended periods of time*. So, would that, would the times she was in the Unna boot also effect the balancing of the would be[*sic*]? [22]

The ME responded:

Probably not that much. But you may have to think in a sense that she has, that venous ulcers going back many years. Many years. And she is subject to get those again and it would be a part of the treatment. I don't think that would keep her at home, necessarily.

It's not the prettiest thing, but I think she could work and also be treated for venous insufficiency, unless that ulcer started to grow or something like that and was expanding. Then, you'd have to take it [*sic*] home and put it up and lay in a bed, or something like that.

Q.      Okay. So when's she's in an Unna boot, does that limit, further limit, the time in which she is able to be up and on her feet?

A.      That's a good point. It might limit walking a little. You know, she didn't, might cut that down to say an hour and a half from two hours. But, you know, see, you may have a better idea of this than I do.

But *I have taken it that most of her life is not spent in wearing Unna boots*. I mean, that's the impression I had. *I saw it referred to once or twice but that's in, you know, we have a lot of years here. We have like, twenty years of records.*

Q.      Okay. I'll get to that part later. *If* she was wearing, having to wear an Unna boot for periods of time or months at a time, say three months at a time, would – during that time she was in the Unna boot, would she have less ability to be on her feet?

A.      I think I have already answered that. I believe I said it might take about a half an hour off her, you know, standing or walking in the course of ---

---

[21] *Id*. at 1743.
[22]

Q.     Okay.

A.     A workday.[23]

As is apparent, the ME's reference to Canales' being able to stand for only an hour and a half, not two hours, was made after Carnales' counsel posited a hypothetical that she would be wearing an Unna boot for "months at a time." As is also plain, the ME had previously testified that his opinion was based on Carnales not wearing an Unna boot "most of the time," but rather on the facts demonstrated by the record that she had worn an Unna boot "once or twice" over a twenty year period.

Thus, contrary to Carnales' assertion that the ME had "subsequently reduced the amount of time [Carnales] could be on her feet during a workday based on counsel's cross-examination regarding[Carnales'] need to wear an Unna boot during the relevant time period,"[24]the reality is that counsel posed the hypothetical that the record showed – "some evidence"- that Carnales needed to wear an Unna boot "for extended periods of time." To that, the ME was clear that his opinion was based on his understanding of the evidence showing that Carnales needed to wear an Unna boot only "once or twice" over a twenty year period.

Simply put, the ME did not alter his opinion but answered a hypothetical based on a premise that he himself refuted during his answer.[25]

That said, the ALJ committed no error in accepting the ME's opinion that Carnales could stand and/or walk for a total of four hours in an eight-hour workday. Accepting that opinion did not require the ALJ to "play doctor" and override the MEs purportedly revised functional opinion.

---

[23] *Id.* at 1742-44 (emphasis added).

[24] ECF No. 10 at 7.

[25] The ME later made clear that even when using an Unna boot, Carnales would not need to elevate her leg at work but could wear the Unna boot to work and elevate her leg when she got home. Tr. at 1749.

Rather, the ALJ adopted the MEs functional opinion itself, not the modification Carnales' counsel

attempted to suggest with a hypothetical that was never accepted as a proper premise by the ME.

## Conclusion

As such, I recommend finding no error and so further recommend affirming the decision

of the Commissioner.

Date: 08/29/22

s/William H. Baughman, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Any party may object to this Report and Recommendation.  To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation.  If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it.  If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.