**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PENNIE C. CANALES, | ) | CASE NO. 1:21-cv-01051 |
| Plaintiff, | ) ) | JUDGE DAVID A. RUIZ |
| v. | ) ) | |
| KILOLO KIJAKAZI, *Acting Comm'r of Soc. Sec.*, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) ) | |

This matter is before the Court on the Report and Recommendation of Magistrate Judge William H. Baughman, Jr. (R. 16).[1] Plaintiff Pennie C. Canales filed her Complaint (R. 1) challenging the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. Magistrate Judge Baughman issued his Report and Recommendation on August 29, 2022, recommending the Court affirm the Commissioner's decision. (R. 16). Plaintiff filed a timely objection to the Report and Recommendation (R&R) on September 6, 2022 (R. 17), and the Commissioner subsequently filed a response to Plaintiff's objection (R. 18).

---

[1] This case was referred to the magistrate judge pursuant to Local Rule 72.2.

**I. Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable standard of review of a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. Fed. R. Civ. P. 72(b)(3) states:

> *Resolving Objections*. The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Here, Plaintiff objects to the Magistrate Judge's conclusion that the Administrative Law Judge (ALJ) committed no error by failing to address a medical expert's opinion regarding Plaintiff's walking and standing restrictions. (R. 17, PageID# 2980). The Court thus reviews this issue *de novo*.

**II. Discussion**

The issue in dispute involves the ALJ's consideration, when assessing Plaintiff's Residual Functional Capacity (RFC), of medical expert Dr. Jack Lebeau's opinion regarding Plaintiff's walking and standing limitations. (*Id.*, PageID# 2981–2984). More specifically, the parties dispute the potential impact of an Unna boot—"a compression dressing made by wrapping layers of gauze around [one's] leg and foot"—on Plaintiff's ability to walk and stand during the workday. (R. 6, PageID# 1732 n.3; R. 17, PageID# 2981–2984).

During a hearing before the ALJ, Dr. Lebeau opined that Plaintiff could walk and stand for a total of 2 hours each per day. (R. 6, PageID# 1775–1778). Plaintiff's counsel and Dr. Lebeau then had the following exchange regarding how Plaintiff's ability to walk

and stand would be impacted if she wore an Unna boot:

> [Plaintiff's Counsel]: Okay. And there was some evidence in the record regarding [Plaintiff] being in an Unna boot for extended periods of time. So, would that, would the times in which she was in an Una boot also effect [*sic*] the balancing of the would be?
>
> [Dr. Lebeau]: Probably not that much. But you may have to think in a sense that she has, that venous ulcers going back many years. Many years. And she is subject to get those again and it would be part of the treatment. I don't think that would keep her home necessarily.
>     It's not the prettiest thing, but I think she could work and also be treated for venous insufficiency, unless the ulcer started to grow or something like that and was expanding. Then, you'd have to take it home and put it up and lay in a bed or something like that.
>
> [Plaintiff's Counsel]: Okay. So, when she's in an Unna boot, does that limit, further limit the time in which she is able to be up and on her feet?
>
> [Dr. Lebeau]: That's a good point. It might limit walking a little. You know, she didn't, might cut that down to say an hour and a half from two hours. But you know, see, you may have a better idea of this than I do.
>     But I have taken it that most of [Plaintiff's] life is not spent wearing Unna boots. I mean, that's the impression I had. I saw it referred to once or twice, but that's in, you know, we have a lot of years here. We have, like, 20 years of records.
>
> [Plaintiff's Counsel]: Okay. Well, I'll get to that part later. If she was wearing, having to wear an Unna boot for periods of time or months at a time, say, three months at a time, would—during that time when she was in the Unna boot, would she have less ability to be on her feet?
>
> [Dr. Lebeau]: I think I already answered that. I believe I said that it might take about a half an hour off her, you know, being standing or walking in the course of—
>
> [Plaintiff's Counsel]: Okay.
>
> [Dr. Lebeau]: —a work day.
>
> [Plaintiff's Counsel]: Okay. So, you said that you thought, I wasn't sure because I was responding to your belief that she wasn't in an Unna boot that much. But so, with regard to that, you said that it would take off about a half hour of her ability to walk when she may be in an Unna boot, but not much more than that. Correct?

3

> [Dr. Lebeau]: No, I actually probably would make standing about an hour and a half as well. So, that cuts an hour off that four-hour period. Again, hopefully, for limited times for her sake.

(*Id.*, PageID# 1780–1782).

When the ALJ assessed Plaintiff's RFC, she afforded Dr. Lebeau's opinion "great weight," and noted that "[t]reatment records do confirm the claimant's need for an Unna boot, however, records do not suggest that she was functionally limited when wearing it because it is like a compression stocking though more stiff." (*Id.*, PageID# 1736, 1740). The ALJ made no reference to the frequency with which Plaintiff must wear an Unna boot. (*Id.*, PageID# 1734–1741). Ultimately, the ALJ concluded that Plaintiff can walk and stand for 2 hours each per day, a maximum of 4 hours between these two activities. (*Id.*, PageID# 1734).

In her Brief on the Merits, Plaintiff argued that despite the ALJ assigning "great weight" to Dr. Lebeau's opinion, and Dr. Lebeau's alleged testimony regarding Plaintiff's Unna boot restrictions, the ALJ improperly found without explanation that Plaintiff could walk and stand for 2 hours each per day, as opposed to 1.5 hours each per day. (R. 10, PageID# 2909). Plaintiff argued that the ALJ's error was "outcome determinative" because finding that she could walk and stand only for a total of 3 hours per day would have resulted in a finding of disability. (*Id.*, PageID# 2910).

In recommending that the Court affirm the Commissioner's decision, the R&R reasons that Dr. Lebeau's reference to Plaintiff only being able to walk and stand for a total of 3 hours per day "was made after [Plaintiff's] counsel posited a hypothetical that [Plaintiff] would be wearing an Unna boot for 'months at a time.'" (R. 16, PageID# 2977). The R&R further explains that Dr. Lebeau's opinion that Plaintiff was able to

walk and stand for a total of 4 hours per day was based on his understanding that Plaintiff did not wear an Unna boot most of the time. (*Id.*). As a result, the R&R concludes that the ALJ did not commit error by accepting Dr. Lebeau's opinion that Plaintiff could walk and stand for a total of 4 hours per day. (*Id.*).

In her objection to the R&R, Plaintiff asserts that the Magistrate Judge committed factual error since the R&R "did not address the fact [that] the ALJ explicitly found that Plaintiff's treatment record confirmed her need to wear an Unna boot." (R. 17, PageID# 2981). Essentially, Plaintiff argues that once the ALJ found that treatment records confirmed Plaintiff's need for an Unna boot, that the ALJ was at least obligated to explain why she did not adopt Dr. Lebeau's testimony regarding the 1.5-hour walking and standing limitations, rather than the 2-hour limitations that the ALJ ultimately adopted. (*Id.*, PageID# 2982–2983).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).

The question, then, is whether the ALJ's conclusion that Plaintiff was able to walk and stand for a total of 4 hours per day was supported by substantial evidence,

despite the ALJ finding Plaintiff's "need for an Unna boot" and Dr. Lebeau's testimony about a 3-hour total walking and standing restriction. The Court holds that there was substantial evidence for the ALJ's conclusion.

As the R&R points out, it is clear from Dr. Lebeau's testimony that when he offered his thoughts on the potential walking and standing restrictions from wearing an Unna boot, he was responding to a hypothetical question offered by Plaintiff's counsel. (R. 16, PageID# 2977). Even if Dr. Lebeau believed that a hypothetical person wearing an Unna boot would only be able to walk and stand for a total of 3 hours each day, there is nothing in his testimony indicating that he believed Plaintiff herself was a person who had to wear an Unna boot so frequently that it would impact her ability to walk and stand in this way. In fact, Dr. Lebeau explained that the infrequency with which he understood Plaintiff to wear an Unna boot informed his opinion that Plaintiff could walk and stand for a total of 4 hour per day: "I have taken it that most of [Plaintiff's] life is *not* spent wearing Unna boots. . . . I saw it referred to *once or twice*, but that's in . . . 20 years of records." (R. 6, PageID# 1781 (emphases added)). Moreover, and as the ALJ explained, an Unna boot is a temporary application to address an open wound that is not healing or healing slowly—it is not a permanent application, as Plaintiff appears to suggest in her objection. (*Id.*, PageID# 1732 n.3).

The Court understands Plaintiff's argument to be that the ALJ should have explained why, after determining Plaintiff's need for an Unna boot, the decision did not ultimately adopt the 1.5-hour walking and standing restrictions that Dr. Lebeau mentioned in his answers to Plaintiff's counsel's hypothetical questions. In the Court's view, there was nothing for the ALJ to explain: the 1.5-hour limitations that Dr. Lebeau

6

mentioned in his testimony did not somehow supplant Dr. Lebeau's opinion that Plaintiff was able to walk and stand for a total of 4 hours, simply because he answered a hypothetical question from Plaintiff's counsel. There was more than enough substantial evidence to support the ALJ's RFC determination, and following the controlling case law, the Court will not reverse the Commissioner's decision.

### III. Conclusion

Plaintiff's objection (R. 17) is OVERRULED, and the Magistrate Judge's Report and Recommendation (R. 16) is hereby ADOPTED. The Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 28, 2022